

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 13-00353 |
| | (Chapter 11) |
| 1250 OCEANSIDE PARTNERS, | (Jointly Administered) |
| Debtor. | |
| This document relates to | **HEARING** |
| ALL CASES | DATE:  MAY 12, 2014 |
| | TIME:   9:30 A.M. |
| | JUDGE: HON. ROBERT J. FARIS |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### IN SUPPORT OF ORDER CONFIRMING PLAN PROPONENTS'
### THIRD AMENDED JOINT CONSOLIDATED PLAN OF
### REORGANIZATION DATED NOVEMBER 22, 2013; EXHIBIT A

The hearing on confirming ("Confirmation Hearing") of the Joint Plan

Proponents' Third Amended Joint Consolidated Plan of Reorganization Dated as of

November 22, 2013 ("Plan") commenced on May 12, 2014, at 9:30 a.m., before the

Honorable Robert J. Faris, United States Bankruptcy Judge for the District of

Hawaii.  Appearances were as noted in the record.

Having considered all of the pleadings and evidence filed in support of confirmation, all of the objections to confirmation of the Plan having been withdrawn, pursuant to the Batiste Settlement as set forth below, or overruled, and based on the record in these cases, the arguments and representations of counsel, and the Declarations of G. Rick Robinson, Martin Guerrero, James E. Hallstrom, Jr., Ross Murakami, Philip Handley, Craig Pickett, Dave Weaver, Alika Piper, Logan Alexander, and Charlotte Siligo, filed in support of the Plan and/or in support of Sun Kona Finance I, LLC's ("SKFI") Motion to Estimate Proof of Claim No. 60 Filed By Sun Kona Finance I, LLC for Plan Confirmation Purposes, filed January 28, 2014 ("Estimation Motion"), all of the attached exhibits to the foregoing declarations having been accepted into evidence, and good cause appearing, the Court now makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

     1.     1250 Oceanside Partners ("Oceanside"), Front Nine, LLC ("Front Nine"), and Pacific Star Company, LLC ("Pacific Star") (collectively, "Debtors"), the debtors and debtors-in-possession in Chapter 11 case nos. 13-00353, 13-00354, and 13-00355, which were commenced by the filing of voluntary petitions on March 6, 2014 ("Cases").

     2.     No creditors committee has been appointed in these cases.

3.     On November 22, 2013, SKFI and the Debtors filed Debtors' and Sun

Kona Finance I, LLC's Third Amended Joint Consolidated Plan of Reorganization

Dated as of November 22, 2013.[1]

### Approval of the Disclosure Statement, Solicitation, and Confirmation Hearing Notice

4.     On January 28, 2014, the Bankruptcy Court entered that certain Order

Granting Motion to Approve Disclosure Statement for Joint Consolidated Plan of

Reorganization Dated November 22, 2013, Balloting Procedures and Scheduling

Deadlines ("Solicitation Order") that, among other things, (a) approved the

Disclosure Statement pursuant to Bankruptcy Code § 1125 and Federal Rule of

Bankruptcy Procedure ("Rule") 3017, (b) established April 2, 2014, as the date for

the Confirmation Hearing (later continued to May 12, 2014), (c) approved the form

and method of notice of the Confirmation Hearing ("Confirmation Hearing Notice),

(d) established procedures for soliciting and tabulating votes with respect to the

Plan, and (e) established procedures governing the Confirmation Hearing.

5.     In accordance with the Solicitation Order, the following items were

transmitted to creditors:  (a) the Disclosure Statement, (b) the Confirmation Hearing

Notice (as defined in the Solicitation Order), and (c) with respect to those creditors

in classes entitled to vote under the Plan and the Solicitation Order, a Ballot (as

fined in the Solicitation Order).  All of said documents were transmitted to the

---

1 Capitalized terms used herein shall have the same meaning as set forth in the Plan, unless otherwise noted.

appropriate parties on or before February 21, 2014. Such service is adequate and proper as provided by Bankruptcy Rule 3017(d), and no other or further notice is or shall be required.

6.     On April 10, 2014, the Plan Proponents caused to be filed the Plan Supplement with respect to the Plan.

7.     On April 5, 2014, the Plan Proponents filed the Declaration of Alika Piper relating to Voting Tabulation, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Plan ("Ballot Tabulation"). A Supplemental Declaration of Alika Piper was filed on May 14, 2014, to reflect the change in votes resulting from the Batiste Settlement. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order.

8.     The Plan Proponents filed memoranda and declarations in support of Confirmation and supporting documents (collectively, "Confirmation Evidence") as reflected in this Court's docket. All exhibits attached to the Confirmation Evidence have been admitted into evidence without objection by any party.

9.     This Bankruptcy Court takes judicial notice of the docket of these Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence

and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Cases.

10.     The Plan Proponents have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of evidence, and have done so as set forth herein.

## Batiste Settlement

11.     The Batiste/Davis/Sun Kona Finance I, LLC Binding Settlement Term Sheet ("Settlement Term Sheet"), executed by the attorneys for the respective parties, was presented to the Court at the Confirmation Hearing. The terms of the Settlement Term Sheet were placed on the record by counsel for SKFI at the Confirmation Hearing and none of the parties present raised any objections to the settlement.

12.     The Court has been informed that the parties to the Settlement Term Sheet have amended the settlement to clarify the parties being released by the Batiste and Davis Creditors. The amendment does not affect the rights to any other party to these proceedings. A copy of the Amended Batiste/Davis/Sun Kona Finance I, LLC Binding Settlement Term Sheet is attached hereto as Exhibit A ("Batiste Settlement"). The Batiste Settlement is fair and equitable and in the best interest of the creditors of the respective Debtors' Estates.

13.     Pursuant to the Batiste Settlement, the Batiste Creditors, as defined in

the Batiste Settlement, have withdrawn all of their objections to the Plan and to the

Estimation Motion and have withdrawn all declarations filed in support of the

Batiste Creditors' objections. The Batiste Creditors have changed their respective

votes, to vote in favor of the Plan, as amended.

14.     Pursuant to the Batiste Settlement, the Davis Creditors, as

defined in the Batiste Settlement, have withdrawn their objections to the Plan, filed

as Class 9 Creditors' Objection to the Confirmation of the Third Amended Plan of

Reorganization on March 12, 2014 and a Supplement thereto filed May 5, 2014.

The Davis Creditors have changed their respective votes to vote in favor of the

Plan, as amended.

15.     As a result of the Batiste Settlement, all objections to the Plan have

been withdrawn. All objections that may have been filed as Joinders to filed

objections are also deemed withdrawn and to the extent not withdrawn, are

overruled.

16.     Pursuant to the Batiste Settlement, the SKFI Claim is to be allowed for

all purposes in the amount of $627,000,000 as a Secured Claim encumbering all of

the Debtors' real and personal property, except the Excluded Assets and the Claim

of SKFII is to be allowed as filed.

### Bankruptcy Code Requirements For Confirmation and Classification

17.     In addition to Administrative Claims and Priority Tax Claims, which

need not be classified, the Plan designates 12 Classes of Claims and three Classes of Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and Interests created under the Plan.

18.     The Plan specifies that Classes 1 and 4 are not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy code. Said Classes are deemed to have accepted the Plan because they are not impaired under the Plan.

19.     The Plan designates that Classes 2, 5, 6, 7, 8, 9, 10, 11, and 12 are impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

20.     Class 3 is deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g), because said Class is not receiving or retaining any property under the Plan. The interest of the existing equity holders of the Debtors (Classes 13, 14, and 15) will be extinguished under the Plan and Classes 13, 14, and 15 are deemed to have rejected the Plan, pursuant to section 1126(g) of the Bankruptcy Code.

21.     Votes to accept and reject the Plan have been solicited from creditors holding Claims in Classes 2, 5, 6, 7, 8, 9, 10, 11, and 12. Such votes were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practices.

22. As set forth in the Ballot Tabulation as amended, Classes 2, 4, 5, 6, 7, 8, 9, and 12 voted to accept the Plan, pursuant to section 1126(c) of the Bankruptcy Code.

## Treatment of Secured Claims

23. The holders of Allowed Secured Claims (Classes 2, 4, 5, 6, 7, and 8) will receive at least as much as they would receive in a case under chapter 7 with respect to those Secured Claims. Each of the Secured Classes voted in favor of the Plan.

## Unsecured Claims

24. The holders of Allowed General Unsecured Claims (Classes 9, 10, and 11) will receive substantially more than they would receive in a case under chapter 7, because if the assets of the Debtors were liquidated outright, said Classes would receive less than 2% of their total claim amount. Classes 9, 10, and 11 will receive at least 3.5% of their allowed claims under the Plan, as amended. As a result, holders of Allowed Classes 9, 10, and 11 Claims will receive more under the Plan than they would receive if the Debtors' cases were converted to cases under chapter 7. Members of Class 12, the Convenience Class, will receive more than they would receive in a chapter 7 liquidation.

## Equity Interests

25. Allowed Equity Interests in Classes 13, 14, and 15 will not receive any

consideration under the Plan. They would, however, not receive any consideration if these cases were converted to cases under chapter 7.

26.     The Plan provides for the same treatment for each Claim or Interest in each respective Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

### Means of Implementation

27.     The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation.

28.     The additional capital necessary to emerge from Chapter 11 will be provided by SKFI pursuant to the terms of a $65,000,000 Exit Loan to be funded, as necessary, from and after the Effective Date. Based on the projections attached to the Declaration of Martin Guerrero in Support of Confirmation of Plan, filed February 19, 2014 as Exhibit B, the Exit Loan will allow the Reorganized Debtors to pay all outstanding administrative claims, fund all Plan obligations to creditors as set forth in the Plan, and will provide adequate working capital for the Reorganized Debtors going forward.

29.     The Debtors have demonstrated adequate assurance of future performance with respect to the assumed executory contracts. No party to an executory contract has objected to the Plan or the assumption of any executory contract.

30.     The Plan Proponents exercised sound and considered business judgment in the formulation of the Plan. The Debtors have demonstrated sound business purpose and justification for the Plan, pursuant to Bankruptcy Code § 363(b).

31.     All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been paid or will be paid pursuant to the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

32.     The Debtors' proposed that G. Rick Robinson be appointed Administrator of the Unsecured Creditors' Fund. No party has objected to Mr. Robinson's appointment as Administrator. The Administrator shall be compensated, subject to Court approval, pursuant to the fee schedule applicable to trustees in Chapter 7 cases.

33.     Any finding of fact subsequently determined to be a conclusion of law shall be deemed a conclusion of law.

## CONCLUSIONS OF LAW

### Jurisdiction and Venue

34.     This proceeding is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).

35.     This Bankruptcy Court has jurisdiction over the Cases, pursuant to

sections 157 and 1334 of title 28 of the United States Code.  Venue is proper

pursuant to sections 1408 and 1409 of title 28 of the United States Code.

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L),

and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan

complies with the applicable provisions of the Bankruptcy Code and should be

confirmed and have exclusive jurisdiction over all of the Debtor's assets.

### Confirmation Requirements

### Section 1129(a)(1)

36.     The Plan complies with the applicable provisions of the Bankruptcy

Code, thereby satisfying section 1129(a) of the Bankruptcy Code.

(a)     The Plan properly places substantially similar claims in each

class and designated such classes of claims, thereby satisfying sections 1122 and

1123(a)(1) of the Bankruptcy Code;

(b)     The Plan specifies the treatment of each Class that is not

impaired, thereby satisfying section 1123(a)(2);

(c)     The Plan specifies the treatment of each Class that is impaired, thereby satisfying section 1123(a)(3);

(d)     The Plan provides for the same treatment for each claim or interest in a particular Class, unless the holder thereof agrees to a less favorable treatment, thereby satisfying section 1123(a)(4);

(e)     The Plan and the Plan Supplement include the adoption and implementation of all corporate actions necessary to implement the Plan and the execution of all documents and the implementation of all actions as required with respect to and in accordance with the Plan provisions, thereby satisfying section 1123(a)(5);

(f)     Section 1123(a)(6) does not apply to the Debtors on the Plan;

(g)     The Plan Proponents have disclosed the identity of the manager of the Reorganized Debtors, consistent with the interests of creditors, equity holders, and public policy in accordance with section 1123(a)(7);

(h)     The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code; and

(i)     The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

### Section 1129(a)(2)

37.     The Plan Proponents have complied with the applicable provisions of

U.S. Bankruptcy Court - Hawaii   #13-00353   Dkt # 1008   Filed   06/02/14   Page 12 of 25

the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

(a)     The Debtors are proper debtors under section 109 of the Bankruptcy Code;

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

## Section 1129(a)(3)

38.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The good faith of the Debtor is evident from the facts and records of these cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors.

39.     The injunctive provisions of the Plan and the Confirmation Order implement the Debtors' discharges.  Moreover, the Plan provides a mechanism for parties in these cases to seek relief from the injunctions.

## Section 1129(a)(4)

40.     Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Debtors' chapter 11 cases, or in connection with the Plan and incident to the Debtors' chapter 11 cases, have been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4).

## Section 1129(a)(5)

41.     The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity of the individual who will serve as manager of the Reorganized Debtors as of the Effective Date has been fully disclosed.  The appointment to, or continuance in, such offices of such person is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.  The identity of any insider that will be employed or retained by the Reorganized Debtors after the Effective Date and the nature of such insider's compensation have also been fully disclosed.

## Section 1129(a)(6)

42.     The Plan does not provide for any changes in rates established or

approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

## Section 1129(a)(7)

43.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses provided in the Disclosure Statement as amended (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of a Claim or Interest in an impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that  holder would receive or retain if each Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

## Section 1129(a)(8)

44.     Classes 1 and 4 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Classes 2, 5, 6, 7, 8, 9, and 12 are impaired and have voted to accept the Plan in accordance with section 1126(d) of the Bankruptcy Code.  Because Classes 10, 11, 13, 14, and 15 are impaired and have not accepted, section 1129(a)(8) of the Bankruptcy Code is not satisfied and confirmation over these nonaccepting Classes is pursuant to section 1129(b) of the Bankruptcy Code, as concluded below.

U.S. Bankruptcy Court - Hawaii   #13-00353   Dkt # 1008   Filed  06/02/14   Page 15 of 25

### Section 1129(a)(9)

45.　　The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

### Section 1129(a)(10)

46.　　At least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by an insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.　Classes 4, 5, 7, 8, 9, and 12 satisfy this requirement.

### Section 1129(a)(11)

47.　　The evidence proffered, adduced, or presented prior to and at the Confirmation Hearing (a) is persuasive and credible, and (b) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

48.　　In order to satisfy Bankruptcy Code § 1129(a)(11), the Plan Proponents need not prove that there is an absolute certainty that the conditions to confirmation will be met.　On the contrary, the Plan Proponents need only show that the Plan offers a reasonable assurance of success. The Plan has the requisite level of likelihood of success.

U.S. Bankruptcy Court - Hawaii　#13-00353　Dkt # 1008　Filed　06/02/14　Page 16 of 25

## Section 1129(a)(12)

49. All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to the Plan, the terms of which are satisfactory to the Debtors and the United States Trustee, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

## Section 1129(a)(13)

50. Bankruptcy Code § 1129(a)(13), which requires a plan to provide for the continuation of payment of all "retiree benefits" (as defined in Bankruptcy Code § 1114(a)), is inapplicable in the instant case as the Debtors do not have any such obligations.

## Section 1129(b)

51. Based upon the evidence proffered, adduced, or presented by the Plan Proponents prior to and at the Confirmation Hearing and admitted into evidence at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to each rejecting Class, as required by section 1129(b)(1) of the Bankruptcy Code. Pursuant to Bankruptcy Code section 1129(b)(2)(B)(ii), no holders of Claims or Interests that are junior to those of Holders of Allowed Classes 10, 11, or 12, will receive or retain any distribution on account of junior interests under the Plan. With regard to the Holders of Equity Interests in Classes 13, 14,

U.S. Bankruptcy Court - Hawaii   #13-00353   Dkt # 1008   Filed  06/02/14   Page 17 of 25

and 15, pursuant to Bankruptcy Code section 1129(b)(2)(C)(ii), no holder of junior interests will receive or retain any right under the Plan. In addition, the Plan does not provide for payment of more than the full amount of their respective Allowed Claims to any senior Class.

52. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of each rejecting Class.

## Other Matters

53, The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. No governmental agency with standing to raise an objection pursuant to Bankruptcy Code § 1129(d) has, in fact, raised any such objection. This is strong evidence that the principal purpose of the Plan is not tax avoidance.

54. All modifications to the Plan filed or announced prior to the conclusion of the Confirmation Hearing constitute technical changes and/or changes that have either been consented to by affected constituents or which do not require additional disclosure under Bankruptcy Code §§ 1125 or 1127(a), or re-solicitation of votes under Bankruptcy Code § 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, except as allowed at the Confirmation Hearing under the Batiste Settlement. The modification does not adversely change the

treatment for the accepting Classes. Therefore, the acceptances of the accepting Classes are deemed to apply to the modification. Additional notice under Bankruptcy Rule 3019(a) is not required.

55.     Based on the record before the Bankruptcy Court in this Case, the Debtors and their respective employees, officers, members, directors, agents, shareholders, and representatives, and any professional persons employed or formerly employed by any of them, have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

56.     Article VII of the Plan governing the assumption and rejection of executory contractors and unexpired leases satisfies the requirements of sections 365 and 1123(b)(2) of the Bankruptcy code, including the requirement that adequate assurance of future performance under the Assumed Executory Contracts will be provided.

57.     The release, injunction, and exculpation provisions contained in the Plan are fair and equitable, are given for valuable consideration, were properly noticed to holders of Claims and Interests and other interested parties in accordance

with the requirements of due process and the applicable provisions of the
Bankruptcy Code and Bankruptcy Rules, and are in the best interests of the Debtor
and its Chapter 11 Estate.

58.     Each term and provision of the Plan is valid and enforceable pursuant
to its terms.

59.     The Plan satisfies the requirements for confirmation set forth in section
1129 of the Bankruptcy Code.

60.     The Debtors have satisfied the requirements of Bankruptcy Code
§ 365(b)(1) in connection with the assumption of the Assumed Executory
Contracts.  Each of the Assumed Executory Contracts is an executory contract or an
unexpired lease of the Debtor under Bankruptcy Code § 365.  All conditions under
Bankruptcy code § 365 for the assumption by the Debtor of each Assumed
Executory Contract to which it is a party have been satisfied.

61.     The Bankruptcy Court may properly retain jurisdiction over the
matters set forth in Section 11.1 of the Plan and Bankruptcy Code § 1142.  It is
appropriate for this Court to retain jurisdiction to:  (a) enforce and implement the
terms and provisions of the Plan; (b) enforce the Assumed Executory Contracts;
and (c) resolve any disputes arising under or related to the Plan.

62.     Pursuant to Bankruptcy Code section 1146(c): (a) the issuance,
transfer, or exchange of notes or equity securities under the Plan; or (b) the creation

20

of any mortgage or other security interest in furtherance of, or in connection with, the Plan shall not be subject to any stamp tax, recording tax, conveyance tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.

63.     The Batiste Settlement meets all of the requirements of Rule 9019 of the Rules of Bankruptcy Procedure and should be approved by the Court.

64.     Any conclusion of law later determined to be a finding of fact shall be deemed a finding of fact.

65.     Based on the foregoing findings and conclusions, it is appropriate for the Court to enter the Confirmation Order.

**END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW**

APPROVED AS TO FORM:


Submitted by:

WAGNER CHOI & VERBRUGGE
JAMES A. WAGNER
NEIL J. VERBRUGGE
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone:   (808) 533-1877
Facsimile:    (808) 566-6900
E-Mail:  jwagner@hibklaw.com;
nverbrugge@hibklaw.com; aito@hibklaw.com

Counsel for Sun Kona Finance I, LLC

KLEVANSKY PIPER LLP
SIMON KLEVANSKY
ALIKA L. PIPER
841 Bishop Street, Suite 1707
Honolulu, Hawaii 96813
Telephone: (808) 536-0200
Facsimile: (808) 237-5757
E-Mail: sklevansky@kplawhawaii.com
apiper@kplawhawaii.com

Counsel for Debtors
and Debtors-in-Possession

## AMENDED BATISTE/DAVIS/SUN KONA FINANCE I, LLC
## BINDING SETTLEMENT TERM SHEET

- SKFI shall increase the Unsecured Creditors Fund to $1,550,000.

- SKFI and the Davis Creditors will not oppose an administrative expense claim by the Bays firm in the amount of $250,000 for making a substantial contribution to the case.

- All Adversary proceedings filed by the Batiste Creditors and SKFI, including but not limited to, Nos. 13-90068, 14-90007, and 14-90016, shall be dismissed, with prejudice.

- Batiste and the Davis Creditors' claims of any nature whatsoever they may have against SunChase Holdings, Inc., SKFI, SKFII, and their respective officers, directors, managers, parents, and affiliates, and Craig Pickett, James Shough, and Anthony Gianulias, are released.

- SKFI and SKFII's claims of any nature whatsoever they may have against the Batiste and Davis Creditors, are released.

- The Batiste and the White & Davis Creditors shall retain all their claims against the Bank of Scotland ("BOS"), including the claims that BOS became the general partner of Debtor 1250 Oceanside and became liable for the claims of the Batiste and Davis Creditors.

- The claim of SKFI shall be allowed for all purposes in the amount of $627,000,000 as a secured claim encumbering all of the Debtors' real and personal property, except the Excluded Assets.

- The claim of SKFII shall be allowed as filed.

- Section 3.9.2(B)(C) shall be deleted from the Plan as moot.

- Sections 5.9 and 8.2 of the Plan shall be modified to permit any Class 9, 10, or 11 creditor to object to the claims of any other Class 9, 10, or 11 creditor, provided that any such objection is filed within 60 days of the Effective Date.

- The Plan shall be confirmed as filed, except as modified by this Settlement.

**EXHIBIT A**

DATED as of May 12, 2014

_____
JAMES A. WAGNER
Attorney for Sun Kona Finance I, LLC,
Sun Kona Finance II, LLC, and
SunChase Holdings, Inc.

_____
SIMON KLEVANSKY
Attorney for 1250 Oceanside Partners,
Front Nine, LLC, and
Pacific Star Company, LLC

_____
A. BERNARD BAYS
Attorney for Batiste Creditors:
William Batiste and Virginia Batiste,
as Trustees of The William and
Virginia Batiste Revocable Trust dated
January 23, 2001; Richard L. Dvorak and
Teresa D. Dvorak, as Trustees of The
Richard L. Dvorak Living Trust; Jennie
Ann Freiman, Individually and as Trustee
of The Jennie Ann Freiman Profit Sharing
Plan; Stuart H. Mendel, Individually and
as Trustee of The Jennie Ann Freiman
Profit Sharing Plan

JERROLD K. GUBEN
Attorney for Davis Creditors:
Mark Douglas Davis and Susan Perry
Davis, Trustees of the 2000 Davis Family
Trust UDT dated May 2, 2000, Richard O.
White and Toni S. White, Trustees of the
White Family Trust Declaration of Living
Trust dated June 25, 1999, William E. Allen,
Trustee of the William E. Allen Living Trust
dated October 6, 1999 and Terri M. Allen,
Trustee of the Terri M. Allen Trust dated
October 6, 1999, Chung Family
Investments, LLC, Thomas Hassfurther,
Trustee of the Jan R. Hassfurther Trust
Agreement Dated July 31, 1998, Michael
J. Roberts, Michael J. Roberts, Inc., and
MJR FLLLP